ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Stevie Bradley, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | November 21, 2023 <br><br> Court of Appeals Case No. <br> 22A-CR-2317 <br><br> Appeal from the St. Joseph <br> Superior Court <br><br> The Honorable John M. <br> Marnocha, Judge <br><br> Trial Court Cause No. <br> 71D02-2109-F1-000020 |

**Opinion by Judge Felix**
Judges Crone and Brown concur.

**Felix, Judge.**

## Statement of the Case

Stevie Bradley was charged with multiple offenses stemming from his attack on his then-girlfriend. At the first two hearings after Bradley's arrest and before he was represented by counsel, Bradley orally moved for an early trial pursuant to Indiana Criminal Rule 4(B) ("C.R. 4(B)"). After a delay in proceedings due to Bradley's competency evaluation, the trial court reset Bradley's trial date for more than a month after Bradley's C.R. 4(B) 70-day period expired. Bradley objected to the new trial date and subsequently filed several motions for discharge pursuant to C.R. 4(B).

The trial court overruled Bradley's objection and denied his motions for discharge based on the trial court's belief that Bradley's new trial date had been set within the C.R. 4(B) 70-day period. A jury ultimately convicted Bradley of most of the charges brought against him, and the trial court sentenced Bradley to a total of 40 years. Bradley appeals and raises one issue for our review, which we restate as follows: Whether Bradley's C.R. 4(B) 70-day period expired before he was brought to trial.

## Facts and Procedural History

Bradley was arrested in September 2021 for attacking his then-girlfriend. At his first post-arrest hearing on September 16, 2021, Bradley, who was in custody and chose to proceed pro se, made a motion for an early trial. The magistrate

ordered Bradley to file this motion in writing. The magistrate also set bond, but Bradley remained in jail.

[4] Twelve days later, on September 28, 2021, at his second post-arrest hearing, which was before the presiding judge, Bradley, who was still pro se, again orally moved for an early trial. The trial court did not require Bradley to file this motion in writing, granted this motion, and set Bradley's trial to begin on December 6, 2021.

[5] On November 29, 2021, the trial court sua sponte ordered Bradley to undergo a competency evaluation.[1] Bradley was deemed competent on March 15, 2022, at which time the trial court reset Bradley's trial to begin on May 4, 2022. In choosing this date, the trial court noted that Bradley's trial had a priority setting and was within the C.R. 4(B) 70-day period. Bradley, who was pro se at that time, immediately objected to the new trial date as being outside of the C.R. 4(B) 70-day period.

[6] On May 4, 2022, before Bradley's trial began, he moved for a continuance based on a discovery issue and also requested the court appoint him counsel. The trial court granted the continuance over the State's objection but found that

---

[1] The trial court explained at a later hearing that its decision to sua sponte order a competency evaluation for Bradley was based on "in-court and remote conduct by Mr. Bradley"; "a jail e-mail that was received that was filed in this case indicating Mr. Bradley had a psychiatric history and there were some issues with respect to medication"; and Bradley's refusal, at that point in time, to be transported to court. Supp. Tr. Vol. II at 5. Bradley objected to the last basis, arguing that he did not refuse to come to court; rather, he "refused to take his kufi off [his] head," which allegedly resulted in jail officials not allowing Bradley to come to court. *Id.* at 8.

the delay in Bradley's trial was attributable to him. The trial court reset the trial for July 18, 2022.

[7] On June 16, 2022, Bradley filed a motion for discharge pursuant to C.R. 4(B); the trial court denied the motion approximately one month later. On July 5, 2022, due to a change in Bradley's appointed counsel, the trial court reset the trial for August 8, 2022.

[8] Before Bradley's trial began on August 8, 2022, Bradley again moved for discharge based on his trial being set after the C.R. 4(B) 70-day period expired; the trial court denied this motion. After a three-day trial, the jury ultimately convicted Bradley of attempted murder as a Level 1 felony, domestic battery resulting in serious bodily injury as a Level 5 felony, battery by means of a deadly weapon as a Level 5 felony, intimidation as a Level 5 felony, and aggravated battery as a Level 3 felony. The trial court sentenced Bradley to a total of 40 years. This appeal ensued.

## Discussion and Decision[2]

[9] Bradley contends that he was entitled to discharge under C.R. 4(B) because, while he was incarcerated,[3] more than 70 days elapsed between the date he

---

[2] Bradley failed to include citations to the Record on Appeal or Appendix in his Statement of the Case in violation of Indiana Appellate Rule 46(A)(5). Bradley also failed to include a statement of the applicable standard of review in his Argument in violation of Appellate Rule 46(A)(8)(b). Nevertheless, we address the merits of his claim.

[3] According to the trial court's sentencing order, Bradley was incarcerated for 358 days when the trial court sentenced him on September 7, 2022. Because the parties do not address whether and when Bradley was

moved for an early trial and the date his trial began. In evaluating alleged violations of C.R. 4(B), we review factual findings for clear error and questions of law de novo. *Watson v. State*, 155 N.E.3d 608, 614 (Ind. 2020) (citing *Austin v. State*, 997 N.E.2d 1027, 1040 & n.10 (Ind. 2013); *State v. Azania*, 865 N.E.2d 994, 1002 (Ind. 2007), *clarified on reh'g on other grounds*, 875 N.E.2d 701).

[10] C.R. 4 was adopted to implement a defendant's constitutional right to a speedy trial; it was not adopted to discharge defendants. *Austin*, 997 N.E.2d at 1037 (citing *Cundiff v. State*, 967 N.E.2d 1026, 1027 (Ind. 2012)). C.R. 4(B) in particular allows an incarcerated defendant to "move for an early trial" and then be "discharged if not brought to trial within seventy (70) days." Ind. Crim. Rule 4(B)(1). An incarcerated defendant can trigger C.R. 4(B) at any stage of his criminal prosecution, so the 70-day clock does not begin to run until the incarcerated defendant makes the necessary motion. *Watson*, 155 N.E.3d at 615–16.

[11] Bradley argues that after he was deemed competent on March 15, 2022, the trial court erred in setting his trial for May 4, 2022, because that date was after his C.R. 4(B) 70-day period expired. The State contends that Bradley's C.R. 4(B) 70-day period was extended beyond May 4, 2022, due to congestion of the

---

incarcerated, we assume based on the trial court's calculation of credit time that Bradley was incarcerated for the duration of the proceedings in this case.

court's calendar. The law and record in this case compel us to agree with Bradley.

[12] The C.R. 4(B) 70-day period includes "each and every day after the filing of such motion for early trial . . . including every Saturday, every Sunday, and every holiday" unless the seventieth day is "a Saturday, a Sunday, or a holiday, then such trial may be commenced on the next day thereafter, which is not a Saturday, Sunday, or legal holiday." Crim. R. 4(B)(2).

[13] The C.R. 4(B) 70-day period does not include any calendar days that are attributable to the defendant moving for a continuance, to a delay caused by the defendant's act, or to congestion of the court calendar. Crim. R. 4(B)(1), (F). When defendant-caused delays occur, the C.R. 4(B) 70-day period is "extended by the amount of the resulting period of such delay." Crim. R. 4(F). "However, if the defendant causes any such delay during the last thirty (30) days of any period of time set by operation of [C.R. 4], the State may petition the trial court for an extension of such period for an additional thirty (30) days." *Id.*

[14] For example, if a defendant requests a competency evaluation of himself, then any resulting delay is chargeable to him; that is, any delay caused by the defendant's request for a competency evaluation is not counted in calculating the expiration date of the 70-day early trial period. *Curtis v. State*, 948 N.E.2d 1143, 1150 (Ind. 2011) (citing *Baldwin v. State*, 411 N.E.2d 605, 606 (Ind. 1980)).

[15]     For the purposes of this opinion, we assume that Bradley's early trial period began when he made his second motion for early trial on September 28, 2021.[4] If no delays had occurred here, Bradley's C.R. 4(B) 70-day period would have expired on December 7, 2021. The trial court originally set Bradley's trial to begin on December 6, 2021. On November 29, 2021, 62 days after the trial court granted Bradley's early trial motion, the trial court vacated the December 6, 2021, trial date and sua sponte ordered a competency evaluation of Bradley. Bradley and the State agree that the resulting 107-day delay is not chargeable to the State. Appellant's Br. at 14 (citing *Baldwin*, 411 N.E.2d at 606); Appellee's Br. at 12 (citing *Curtis*, 948 N.E.2d at 1150).

[16]     When Bradley was deemed competent on March 15, 2022, the State had eight more days—up to and including March 23, 2022—to bring Bradley to trial unless Bradley delayed trial or the trial court found congestion of the calendar prevented such a quick turnaround. *See* Crim. R. 4(B)(1)–(2), 4(F). In looking for new dates for Bradley's trial, the trial court stated: "I'm going to treat your original motion for a speedy trial as a continuing motion. So we are at day -- let me see here -- 74. 70 days would be 144." 2d Supp. Tr. Vol. II at 4. It is difficult to discern what the trial court meant by "continuing motion," but it appears the trial court calculated the new end date for Bradley's early trial

---

[4] While Bradley raises an issue regarding when the C.R. 4(B) 70-day period began, that issue is not relevant to our analysis. Accepting, without deciding, the State's contention that Bradley's early trial period started on September 28, 2021, the later of the two dates, is accurate, the result remains the same—a C.R. 4(B) violation occurred.

period as 70 days after March 15, 2022, as if Bradley had made a subsequent early trial motion. *See Finnegan v. State*, 201 N.E.3d 1186, 1193 (Ind. Ct. App.) (citing *Minneman v. State*, 441 N.E.2d 673, 677 (Ind. 1982), *reh'g denied*; *Hahn v. State*, 67 N.E.3d 1071, 1081 (Ind. Ct. App. 2016), *trans. denied*), *trans. denied*, 209 N.E.3d 1175 (Ind. 2023).

[17] The trial court ultimately set Bradley's trial to begin on May 4, 2022, to which Bradley objected as being outside of the C.R. 4(B) 70-day period. The trial court responded to Bradley's objection in relevant part as follows:

> Well, you're correct in your timing issue with respect to all of this; but nonetheless, I think an adequate record was made on all of those dates which later led to my belief that there might be some competency issues that tolls or extends the amount of time[.]

2d Supp. Tr. Vol. II at 5.

[18] The trial court further explained its March 15, 2022, statements in ruling on Bradley's June 15, 2022, motion for discharge:

> The trial was vacated on November 29 as a result of the Court's concern over a competency issue. . . . We had the doctors evaluate Mr. Bradley, and on March 15 of 2022, the trial was set within -- set for May 4. *That trial was set within 70 days. I did not require Mr. Bradley to file yet a new written motion for an early trial, which I think would be required.* That time, while the competency issue was pending, does not count against the State for purposes of discharge in this case.

Supp. Tr. Vol. II at 5–6 (emphases added).

Reading all these statements together reveals that when the trial court set Bradley's trial for May 4, 2022, the trial court was under the belief that

1. Bradley was required to file a new written C.R. 4(B) motion after he was deemed competent; and
2. the C.R. 4(B) 70-day period was *reset* rather than merely *tolled* by the competency evaluation it sua sponte ordered.

2d Supp. Tr. Vol. II at 4–5; Supp. Tr. Vol. II at 5–6.

As noted above, delays and continuances generally extend (*i.e.*, toll, pause, suspend) the 70-day early trial period as set forth in C.R. 4(B)(1) and (F). Similarly, the Indiana Supreme Court has held that the dismissal and refiling of the same charges does not automatically reset the starting date of the C.R. 4(B) 70-day period. *Goudy v. State*, 689 N.E.2d 686, 691 (Ind. 1997) (citing *State ex rel. Turner v. Hancock Circuit Court*, 385 N.E.2d 447, 448 (Ind. 1979)). Instead, the defendant's previous early trial motion is considered to still be effective, so the clock stops running on the day the charges are dismissed and begins running again on the day that the same charges are refiled or that the defendant is arrested thereon, whichever is later. *Id.* (citing *Turner*, 385 N.E.2d at 448).

If the dismissal and refiling of the same charges do not reset the C.R. 4(B) 70-day period, and if a defendant's request for a competency evaluation of himself does not reset the C.R. 4(B) 70-day period, then a trial court's sua sponte ordering of a competency evaluation for a defendant does not reset it, either. Likewise, if a defendant is not required to refile a motion for early trial when the State dismisses and refiles the same charges or when the defendant requests

a competency evaluation for himself, then it makes sense that a defendant would not be required to refile such a motion after a trial court sua sponte orders he undergo a competency evaluation. At the very least, we cannot find any support for the contentions that a competency evaluation nullifies a defendant's C.R. 4(B) motion or that a competency evaluation resets the defendant's early trial period.

[22] Therefore, absent any delay caused by Bradley or a finding by the trial court that Bradley's trial had to be scheduled after March 23, 2022, due to court congestion or emergency, Bradley's C.R. 4(B) 70-day period expired on March 23, 2022. There is no evidence in the record that Bradley caused any delay that would have necessitated setting his trial for May 4, 2022.

[23] Further, there is nothing in the record that adequately describes court congestion or emergency so as to justify scheduling Bradley's trial after March 23, 2022. The State points to the following statements by the trial court on March 15, 2022, to support its assertion that court congestion prevented the trial court from scheduling Bradley's trial within the C.R. 4(B) 70-day period:

> THE COURT: . . . I know, Mr. Lenyo, that you are backup counsel; and I know that sometimes a pro se situation involves issues that often complicate a trial; but in your view of the evidence, do you think this can be done in two days?
>
> MR. LENYO: I think that there's a possibility.
>
> THE COURT: Well, possibility doesn't give me much pause.

MR. LENYO: It's two or three is what I think.

THE COURT: I don't have three days that week. Well, I'm going to push it ahead a little bit. Cause is set for trial May 4. It's a priority case setting because of –

DEFENDANT: I object, your Honor.

2d Supp. Tr. Vol. II at 4. These statements do not adequately establish that the trial court could not schedule Bradley's trial within his early trial period due to court congestion.

[24] While the magic words "court congestion" need not be used, a trial court must create a record of some kind that clearly indicates the defendant's trial cannot be scheduled within his early trial period due to court congestion. *See Austin*, 997 N.E.2d at 1039 (quoting *Clark v. State*, 659 N.E.2d 548, 552 (Ind. 1995)). The Indiana Supreme Court has held that

> [u]pon appellate review, a trial court's finding of congestion will be presumed valid and need not be contemporaneously explained or documented by the trial court. However, a defendant may challenge that finding, by filing a Motion for Discharge and demonstrating that, at the time the trial court made its decision to postpone trial, the finding of congestion was factually or legally inaccurate. Such proof would be prima facie adequate for discharge, absent further trial court findings explaining the congestion and justifying the continuance.

*Id.* (quoting *Clark*, 659 N.E.2d at 552).

[25]     In other words, if a trial court finds that court congestion (or emergency) prevented scheduling the defendant's trial within the C.R. 4(B) 70-day period, the trial court does not have to explain or document the reasons underpinning that finding. *Austin*, 997 N.E.2d at 1039 (quoting *Clark*, 659 N.E.2d at 552). Once the defendant challenges that finding, however, the trial court must make further findings (which need not be reduced to writing) explaining the congestion and justifying the continuance. *Id.* at 1039, 1043 (quoting *Clark*, 659 N.E.2d at 552).

[26]     For instance, in *Austin v. State*, Austin, the incarcerated defendant, had moved for an early trial pursuant to C.R. 4(B), and trial was set shortly before his early trial period ended. *Austin*, 997 N.E.2d at 1041. Approximately a week before his trial, the State moved to continue Austin's trial due to court congestion that was predominantly caused by the State's need to try another criminal defendant whose cause predated Austin's cause, who had moved for a speedy trial, and who had been in custody for nearly two years. *Id.* at 1041–42. The trial court granted the State's motion without hearing. *Id.* at 1042.

[27]     At the next pretrial conference, Austin objected to any continuance of his trial. *Austin*, 997 N.E.2d at 1042. Nevertheless, the trial court noted the other criminal defendant's speedy trial motion as the basis for a finding of congestion in Austin's case and, over Austin's objection, rescheduled Austin's trial outside of his original C.R. 4(B) 70-day window. *Id.* Once Austin's original early trial period ended, he moved for discharge and challenged the trial court's congestion finding. *Id.* In particular, Austin presented evidence that the trial

court's calendar could have accommodated his trial within his early trial period. *Id.*

[28] At the hearing on Austin's discharge motion, the trial court clarified its calendar and why Austin's trial could not have been held as he contended. *Austin*, 997 N.E.2d at 1042. The State also argued that trying Austin during the alleged availability was not logistically feasible. *Id.* The trial court subsequently maintained Austin's new trial date and thus implicitly denied his motion for discharge. *Id.* In reviewing these events, the Indiana Supreme Court ultimately determined that the trial court's further findings were not clearly erroneous, so the trial court did not err in denying Austin's motion for discharge. *Id.* at 1043.

[29] The facts here are demonstrably different from those in *Austin*. First, the State did not file a motion for continuance based on insufficient time to try Bradley due to congestion of the trial court's calendar, as required by C.R. 4(B)(1) and as the State did in *Austin*. Because the State did not make such a motion, there is no ruling from the trial court from which we could infer that Bradley's trial was set outside his early trial period due to court congestion.

[30] Second, the trial court did not make any statements on the record or in writing that can be construed to denote court congestion. In setting Bradley's trial after he was deemed competent, the trial court stated that it was "going to push [Bradley's trial date] ahead a little bit" because it did not "have three days that week." 2d Supp. Tr. Vol. II at 4. The record does not reveal to which week the

trial court was referring, thereby rendering these statements ambiguous in isolation.

[31]     When read together with the statements the trial court made in ruling on Bradley's June 15, 2022, motion for discharge, as quoted above, the record demonstrates that the trial court's "push ahead" language indicates that it was considering setting Bradley's trial for an unspecified date *later* than May 4, 2022. In other words, as discussed above, the record reveals the trial court mistakenly believed that Bradley's C.R. 4(B) 70-day period reset once he was deemed competent. On this record, we are constrained to conclude that the record does not contain any indication or finding of court congestion. Consequently, there was nothing for Bradley to challenge under the framework described by the Indiana Supreme Court in *Austin*.

## Conclusion

[32]     In sum, without any evidence in the record demonstrating that Bradley's trial could not be scheduled until May 4, 2022, due to some delay caused by Bradley, court congestion, or emergency, we are required to conclude that Bradley's May 4, 2022 trial date fell outside of his C.R. 4(B) 70-day period. Accordingly, Bradley should have been discharged after his C.R. 4(B) 70-day period expired on March 23, 2022. We therefore vacate Bradley's convictions.

[33]     Vacated.

Crone, J., and Brown, J., concur.